

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

```
 1        At a stated term of the United States Court of Appeals
 2   for the Second Circuit, held at the Thurgood Marshall United
 3   States Courthouse, 40 Foley Square, in the City of New York,
 4   on the 19th day of November, two thousand fifteen.
 5
 6   PRESENT: DENNIS JACOBS,
 7            DEBRA ANN LIVINGSTON,
 8            CHRISTOPHER F. DRONEY,
 9                 Circuit Judges.
10
11   - - - - - - - - - - - - - - - - - - - -X
12   UNITED STATES OF AMERICA,
13          Appellee,
14
15          -v.-                                          14-635
16
17   DAVID OLUKAYODE OJO,
18          Defendant-Appellant.
19   - - - - - - - - - - - - - - - - - - - -X
20
21   FOR APPELLANT:           BRUCE ROBERT BRYAN, BRYAN LAW
22                            FIRM, Syracuse, New York.
23
24   FOR APPELLEES:           MARGARET E. GANDY (with Emily
25                            Berger & Douglas M. Pravda on
26                            the brief) for Kelly T. Currie,
27                            Acting United States Attorney
```

MANDATE ISSUED ON 12/23/2015

for the Eastern District of New
York, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Ross, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

David Olukayode Ojo appeals from the judgment of the United States District Court for the Eastern District of New York (Ross, J.), convicting him and sentencing him chiefly to two concurrent terms of 37 months' imprisonment and three years of supervised release for conspiracy to commit wire fraud, see 18 U.S.C. §§ 1343, 1349, and conspiracy to knowingly possess with intent to use unlawfully five false identification documents. See 18 U.S.C. §§ 1028(a)(3), (b)(2)(B), (c)(3)(A), c(3)(B), (f). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**1.** Ojo challenges the sufficiency of the evidence on both convictions. "A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." United States v. Kozeny, 667 F.3d 122, 139 (2d Cir. 2011). "The traditional deference accorded to a jury's verdict 'is especially important when reviewing a conviction for conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (quoting United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir. 1992)).

"[T]he conspiratorial agreement itself may be established by proof of a tacit understanding among the participants, rather than by proof of an explicit agreement . . . ." United States v. Desimone, 119 F.3d 217, 223 (2d Cir. 1997). Drawing all inferences in favor of the government, the evidence adduced at trial was sufficient to show that Ojo had a tacit understanding with his co-conspirators and engaged in "purposeful behavior aimed at furthering the goals of the conspiracy" for both wire fraud

and knowing possession with intent to use unlawfully five false identification documents.  Id.

**2.**  As to the conspiracy to knowingly possess with intent to use unlawfully five false identification documents offense, Ojo contends that the jury instruction was improper.  The government offered alternative theories of liability: (1) that Ojo intended to use identification documents unlawfully to participate in a conspiracy to commit wire fraud; and (2) that Ojo intended to use the identification documents unlawfully to violate New York state law.  If the jury found Ojo guilty on Count One for conspiracy to commit wire fraud, as it did, the government's first theory of liability would be met.  The district court instructed the jury on both theories.  Ojo's argument attacks the instruction given on the second theory.  However, because the instructions were proper and ample evidence supports the first theory--conspiracy to commit wire fraud--Ojo's challenge must be rejected.  "When the jury is properly instructed on two alternative theories of liability, as here, we must affirm when the evidence is sufficient under either of the theories."  United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996).

**3.**  Ojo challenges the denial of his motion to suppress evidence seized during the stop of his car because the stop was pretextual and because Ojo's consent was involuntary.  But the subjective motivation of the officers who made the stop is irrelevant; arguments "that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved" are "foreclose[d]."  Whren v. United States, 517 U.S. 806, 813 (1996); see also United States v. Dhinsa, 171 F.3d 721, 724-25 (2d Cir. 1999) ("In other words, an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance.").

"It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  "In considering a challenge to a district court finding of consent, we are obliged to view the evidence in the light most favorable to the government.  We will not reverse a finding of voluntary consent except for clear error."  United States v. Snype, 441 F.3d 119, 131 (2d Cir.

2006) (internal citation omitted).  The district court's
determination that Ojo voluntarily consented to a search of
his car was not clearly erroneous given: (1) Ojo's signature
on a handwritten consent form for a search of his car,
including its interior, trunk, and glove box; (2) testimony
that Ojo also gave oral consent; and (3) further testimony
that, after the search was completed, Ojo signed a standard
FBI "consent to search" form confirming his prior consent.

    **4.**  Ojo contends that the district court's decision to
dismiss the indictment without prejudice based on a Speedy
Trial Act violation was erroneous.  A proper and principled
consideration of the relevant factors shows otherwise.

    "The determination of whether to dismiss an indictment
with or without prejudice is committed to the discretion of
the district court, and we will reverse such a determination
only upon a finding that the district court abused its
discretion."  United States v. Wilson, 11 F.3d 346, 352 (2d
Cir. 1993) (internal citation omitted).  Factors considered
in this determination are: (1) the seriousness of the
offense; (2) the facts and circumstances of the case which
led to the dismissal; (3) the impact of a re-prosecution on
the administration of the Speedy Trial Act and the
administration of justice; and (4) prejudice to the
defendant.  See id.  "Where the crime charged is serious,
the sanction of dismissal with prejudice should ordinarily
be imposed only for serious delay."  United States v.
Simmons, 786 F.2d 479, 485 (2d Cir. 1986).

    Ojo's offense was unquestionably serious: it was
punishable by a prison term of up to 20 years, and the
evidence established a loss of approximately $80,000
suffered by more than 30 victims.  The nonviolent nature of
this offense cannot overcome these indicia of seriousness.
See United States v. Kiszewski, 877 F.2d 210, 214 (2d Cir.
1989) (noting that perjury was a serious crime "since false
testimony strikes at the heart of administering the criminal
law").  Moreover, the length of the speedy trial violation
was only one day, a delay that does not amount to "serious
delay."  Simmons, 786 F.2d at 485.

    As for the facts and circumstances leading to
dismissal, the government explained that the one-day delay
was likely a byproduct of the prosecutor counting the 30
days from the date of the arraignment rather than the date
of the arrest.  Nothing in the record suggests bad faith or

4

misconduct on the part of the government.  For this reason, the interests of justice weighed in favor of dismissal without prejudice.  See Simmons, 786 F.2d at 486 ("[W]here the violation of the Act was unintentional and the resulting delay not overly long, and where appellant has not presented evidence of prejudice, we do not believe that the administration of justice would be adversely affected by reprosecution.").

Ojo can point to no prejudice he suffered as a result of the one-day delay.  While prejudice is presumed to flow from any delay, this factor requires an incremental showing of actual prejudice; otherwise, this factor would always be satisfied and would not be a variable.  See United States v. Wells, 893 F.2d 535, 540 (2d Cir. 1990) ("We detect nothing in the record to indicate that the Government's delay caused any prejudice . . . .") (emphasis added); United States v. Hernandez, 863 F.2d 239, 244 (2d Cir. 1988) ("[S]hort delays of the kind present here do not become 'serious' violations of the Speedy Trial Act unless there is some resulting prejudice to the defendant.").  A scrupulous application of the applicable standards and rules necessitates the conclusion that the district court did not abuse its discretion in dismissing the indictment without prejudice.

**5.**  Ojo's claims that perjured testimony was presented before the grand jury, during the suppression hearing, and at trial are meritless and lack record support.  Nor was there a double jeopardy violation because Ojo successfully withdrew his guilty plea after initially pleading guilty. See United States v. Olmeda, 461 F.3d 271, 279 n.7 (2d Cir. 2006) ("[J]eopardy is not deemed to attach at the time of a guilty plea, for example, where a defendant subsequently withdraws his plea.").

For the foregoing reasons, and finding no merit in Ojo's other arguments, we hereby **AFFIRM** the judgment of the district court.

                                        FOR THE COURT:
                                        CATHERINE O'HAGAN WOLFE, CLERK

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit