FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR 23 2017

BROOKLYN OFFICE

Page 2

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District _Eastern District of New York_ |
|---|---|
| Name: _Olukayode David Ojo_ | Docket or Case No.: _13-CR-334 (ARR)_ |
| Place of Confinement: _N/A_ | Prisoner No.: _N/A_ |
| UNITED STATES OF AMERICA | Movant (include name under which convicted) |
| v. _David Olukayode Ojo_ | |

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
   _United States District Court, Eastern District of New York_
   _225 Cadman Plaza East, Brooklyn, New York 11201_
   (b) Criminal docket or case number (if you know): _13-cr-334 and 11-cr-570 (ARR)_

2. (a) Date of the judgment of conviction (if you know): _08/08/2013_
   (b) Date of sentencing: _02/27/2014_

3. Length of sentence: _37 months Incarceration and 3 years Supervised release_

4. Nature of crime (all counts): _(1) Conspiracy to commit wire fraud_
   _(2) Conspiracy to commit fraud in connection with_
   _identification documents._

5. (a) What was your plea? (Check one)
   (1) Not guilty ☒   (2) Guilty ☐   (3) Nolo contendere (no contest) ☐
   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment,
   what did you plead guilty to and what did you plead not guilty to? _____

6. If you went to trial, what kind of trial did you have? (Check one)   Jury ☒   Judge only ☐

7. Did you testify at either a pretrial hearing, trial or post-trial hearing?   Yes ☐   No ☒

8. Did you appeal from the judgment of conviction?          Yes ☒          No ☐

9. If you did appeal, answer the following:

    (a) Name of court: _United States Court of Appeals for the 2nd Circuit_

    (b) Docket or case number (if you know): _No. 14-635_

    (c) Result: _Judgment of Conviction Affirmed_

    (d) Date of result (if you know): _____

    (e) Citation to the case (if you know): _Unknown_

    (f) Grounds raised: _Sufficiency of the evidence, Improper jury instruction, erroneous determination voluntary consent, erroneous dismissal of indictment without prejudice, presentation of perjured testimony and violation of double jeopardy._

    (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☒  No ☐

    If "Yes," answer the following:

    (1) Docket or case number (if you know): _15-8182_

    (2) Result: _Denied_

    (3) Date of result (if you know): _03/21/2016_

    (4) Citation to the case (if you know): _Unknown_

    (5) Grounds raised: _Unknown_

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☒  No ☐

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: _U.S. District Court, District of New Jersey_

        (2) Docket or case number (if you know): _Unknown_

        (3) Date of filing (if you know): _03/16/2017_

        (4) Nature of the proceeding: _Petition for a Writ of Habeas Corpus, 28 USC 2241_

(5) Grounds raised: ① Unconstitutional imposition of $92,152 restitution
② Miscalculation of sentence
③ Unconstitutional order of forfeiture

(6) Did you receive a hearing where evidence was given on your motion, petition, application?

Yes ☐  No ☐  Not yet

(7) Result: N/A

(8) Date of result (if you know): ____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: U.S. District Court, District of New Jersey

(2) Docket or case number (if you know): 14-cv-7951 (JLL)

(3) Date of filing (if you know): 12/15/2014

(4) Nature of the proceeding: Petition for Writ of Habeas Corpus, 28 USC 2241

(5) Grounds raised: Unlawful detention

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐  No ☒

(7) Result: Stipulation to dismiss, dismissed based on the Stipulation

(8) Date of result (if you know): 03/31/2015

(c) Did you appeal to a federal appellate court having jurisdiction the action taken on your motion, petition, or application?

(1) First petition:    Yes ☒  No ☐

(2) Second petition:  Yes ☐  No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: Because the second petition was dismissed based on the stipulation between Petitioner and Respondent

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

**GROUND ONE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____

_____See the____ attached_____

_____

_____

_____

_____

_____

(b)  **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

       Yes G   No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: _____Ineffective   assistance__

__of   appellate   Counsel_____

(c)  **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

       Yes G   No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

       Yes G   No G

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes G   No G

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes G   No G

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____


**GROUND TWO:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

See the attached

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes G   No G

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes G   No G

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes G   No G

(4) Did you appeal from the denial of your motion, petition, or application?

Yes G   No G

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes G   No G

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_see the attached_

_30_ _the_ _attached_

(b) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes G   No G

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes G   No G

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:_____

    Name and location of the court where the motion or petition was filed:_____

_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

    Result (attach a copy of the court's opinion or order, if available):_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes G   No G

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes G   No G

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes G   No G

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:_____

_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____See the attached_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes G   No G

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes G   No G

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:_____

    Name and location of the court where the motion or petition was filed:_____

_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes G   No G

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes G   No G

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes G   No G

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which

ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

_____

_____

_____

_____

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the

judgment you are challenging?    Yes ☒  No G

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

issues raised. *U.S. District Court, District of New Jersey,*

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____ *N/A* _____

(b) At arraignment and plea: *Eric Michael Schlosser (07/12/2011), Noel N. Akinsola (08/22/2011), Jeremy F. Orden (08/09/2012), Ephraim Savitt (05/17/2013)(06/05/2013)*

(c) At trial: *Ephraim Savitt* _____

(d) At sentencing: *Ephraim Savitt* _____

(e) On appeal: *Bruce R. Bryan* _____

(f) In any post-conviction proceeding: _____ *N/A* _____

(g) On appeal from any ruling against you in a post-conviction proceeding: *N/A* _____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?        Yes ☒   No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐   No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?        Yes ☐   No ☐

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
   A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of —
        (1) the date on which the judgment of conviction became final;
        (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
        (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
        (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: _____

_____ *See the attached* _____

_____

or any other relief to which movant may be entitled.


_____

Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this

Motion Under 28 U.S.C. § 2255 was placed in the ~~prison mailing system~~ ~~Courthouse front desk~~ *U.S. Postal mail* on ___ *03/22/2017* ___

_____ (month, date, year).


Executed (signed) on ___ *03/22/2017* ___   (date).


_____

Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this

motion. _____

_____

_____

# Supreme Court of the United States
# Office of the Clerk
# Washington, DC  20543-0001

**Scott S. Harris**
Clerk of the Court
(202) 479-3011

March 21, 2016

Clerk
United States Court of Appeals for the Second
Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

Re:  David Olukayode Ojo
v. United States
No. 15-8102
(Your No. 14-635)

Dear Clerk:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

**Scott S. Harris**, Clerk

**MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY OLUKAYODE DAVID OJO**

Relevant Facts Applicable to all Grounds

1. On July 11, 2011, I was driving in the vicinity of Irvington with my seatbelt properly fastened.

2. Without probable cause that I was doing anything wrong or unlawful, a New Jersey State troopers' car put up its siren behind me and directed me to stop. The troopers that stopped me called for backup troopers and they arrived at the scene. The troopers requested that I should provide the vehicle papers, insurance and my driver's license. I provided those requested documents to the satisfaction of the officers.

3. Without probable cause, the troopers further directed me to empty my car's glove compartment for him to see and I complied. Meanwhile, approximately $400 in $1 denominations, bond together with a rubber band, which I had changed prior to my stop was part of the items that I emptied from the glove compartment. One of the troopers took the money from me, looked at it and asked me for what was the money was for. I told him that I had changed the money to the $1 denominations in order to be able to give change to customers that come for purchases at the church's flea market. The money was given back to me.

4. One of the troopers claimed, falsely, that I was not wearing seat belt. A summons, citing failure to wear seatbelt, was issued and handed over to me. The troopers also returned the vehicle papers, insurance and my driver's license that he had taken back to me. I placed the issued summons, vehicle's papers and other items back inside the glove compartment and returned my driver's license back into my wallet. The initial troopers entered their car and then left the scene.

5. Without probable cause to believe that I was in possession of controlled substance, the remaining troopers restrained me from leaving the scene, making phone calls and/or asking for an attorney. Moreover, they invited K9 Unit of the New Jersey State Police Department to bring a dog to the scene. The dog was brought into the scene, searched the car [for controlled substance evidence] and find no incriminating evidence of any substance control. The dog was taken away from the scene.

6. Without probable cause to believe that I was committing any particular crime, FBI agents arrived at the scene after the issuance of the traffic summons but before the dog search. They requested for my consent to search the car which I repeatedly refused. I asked for the purpose of the requested search and no one could say a specific crime. They claimed that they just wanted to search if ANY incriminating evidence will be found in the car. I consistently decline to give a consent. It got to a stage that I was asking passersby to help me get an attorney for my defense. The surrounding troopers, approximately 8 of them, became furious, yelled, drawn their weapons against me and directed me to sit on the hot paved road. The road was so hot and was burning my buttocks. I pled that I should be allowed to use my slippers as seat but my pleas were denied. The GBI agents then directed threats of been embarrassed at me if I continue to refuse to sign the consent. My will was overborne and I was compelled to sign the handwritten.

7. Based on the coerced consent, the car was searched. I was informed that 4 fake IDs, allegedly, were found in the car. I was placed under arrest and taken inside a minivan where I was surrounded by approximately five (5) FBI agents and interrogated without Miranda warning and under the threats that I should give to receive my freedom - "give and take".[1] I was coerced[2] to cooperate with them to the extent that I was taken to several Western Union locations in order to go and ask for money. Those Western Union agents at the locations that I was taken to denied all my request for those money that I was directed to obtain.

---

[1] Through the interrogation I provided compelled statements.

[2] Specifically, I was told that I am not their target, that I should follow their directions in order to track and get their target and that if I cooperate with them, they will let me go but if not, they will hand me over to the troopers and that I will be embarrassed by the troopers.

8. Subsequently, I was transported to go New York office of FBI.[3] At the FBI Office, in furtherance of the coercive promise of give and take, I was told to sign a typed consent for a duplicate copy of the handwritten consent.[4] I was told that it's not a consent to search anything but to make a duplicate copy of the handwritten consent and I signed the typed consent paper as directed which was the only option given to me.

9. Furthermore, I was given a Miranda warning form to sign. I read the form and saw option that says that I may chose to speak only before an attorney, I checked that option and signed the form.[5] FBI Agent Luong tried to coerce me not to check the option for attorney's representation but fell short of kind of trick to use that will make me change my position, then he forget about it.

10. FBI agents further searched me, seized my properties including my belt and transported to MDC Brooklyn, New York.

11. The following day I was taken to the court, arraigned and accused of Aggravated Identity Theft and conspiracy to commit wire fraud. However, the charging document alleged and laid background for the charges as follow:

### PROBABLE CAUSE

*Paragraph 5. As set forth below, there is probable cause to believe that the defendant DAVID OLUKAYODE OJO, together with others, is involved in a scheme to use identification documents including Pennsylvania State drivers license number belonging to numerous other individuals, to obtain Western Union wire transfers by fraudulently representing himself to be the intended recipients of those wire transfers.*

*Paragraph 6. On or about July 11, 2011, New Jersey State Police troopers stopped a car driven by the defendant DAVID OLUKAYODE OJO for a traffic violation. During the stop, the troopers observed a large bundle of cash and various receipts in plain view.[6]*

12. Approximately 31 days after my arrest, on August 11, 2011, a one count indictment for conspiracy to commit wire fraud was returned and filed against me. However, the background for the indictment was amended and changed from the initial complaint. For instance, the indictment stated as follow:

### INTRODUCTION

*At all times relevant to this Indictment, unless otherwise indicated:*

*1. The defendant DAVID OLUKAYODE OJO, together with others, operated a fraudulent scheme by advertising vehicles for sale on web sites and soliciting individuals to wire money to the defendant to purchase the vehicles. In fact, the vehicles did not exist, and the defendant and others kept the money they received for the vehicles without providing anything in return.*

*2. To execute the fraudulent scheme, the defendant DAVID OLUKAYODE OJO, together with others, placed advertisements offering to sell cars and other vehicles on web sites, such as Craigslist. Once victims agreed to purchase vehicles, the defendant, together with others, provided the victims with instructions to wire money, via Western Union or another money transfer service, to the purported seller.*

*3. The defendant, together with others, then used fraudulent identity documents bearing the names of the purported sellers, such as drivers' licenses, to recover the money from Western Union.*

*4. The victims never received any vehicles, and their money was never returned.*

---

[3] On that day, I was not aware of where I was been transported to because I was not familiar with the roads leading to New York. Moreover, I was not informed that I will be transferred out of the state of New Jersey. In addition, I had been taken from one Western Union store to another as they like based on the coercion that was used against me in the minivan.

[4] I was never given an option or choice to sign or refuse signing of any of the handwritten and/or the typed consent.

[5] That night in the office of FBI was the very first day in my life that I will first see such a Miranda warning form. Until this day, the Miranda form that I signed that night was not released by the prosecution.

[6] See the attached Complaint for further information provided in support of probable cause for the alleged crime.

CONSPIRACY TO COMMIT WIRE FRAUD

5. The allegations contained in paragraphs one through four are realleged and incorporated as if fully set forth in this paragraph.

6. In or about and between June 2011 and July 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAVID OLUKAYODE OJO, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings signs, signals, pictures and sounds, to wit: wire transfers via the western Union money transfer service, contrary to Title 18, United States Code, Section 1343.[7]

13. On or about February 22, 2012, I moved the court, through an attorney based upon my affidavit, for the suppression of the physical evidences obtained in the cause of my arrest. In particular, I alleged that there was no probable cause for my stop and that the subsequent search was based upon involuntary consent.[8] On or about April 10, 2012, in response and opposition to my motion, the prosecution expanded on the initially alleged probable cause for arrest and stated as follow:

A. The Traffic Stop

On July 11, 2011, special agents of the Federal Bureau of Investigation ("FBI") conducted a search of a Grey Toyota Avalon, bearing New Jersey license plate J71-AXE (the "Toyota Avalon"), driven by the defendant.

The FBI agents had previously received information that a cellular telephone with the number (201) 349-3753 (the "201 Cell Phone") was involved in the conspiracy described above. Specifically, once a victim agreed to purchase a vehicle advertised by Ojo and his co-conspirators ( the victim was provided with instructions as to where to send money via Western Union. The Western Union transaction information was then transmitted to the 201 Cell Phone (or to other cell phones), along with additional information such as the amount of the transaction, the name of the individual sending the Western Union money transfer (the victim), and the name to whom the Western Union money transfer was sent.

For instance, on June 13, 2011, at 23:44, the following text message was sent from Romania to the 201 Cell Phone:
MT: 3973019070 SEN: [VICTIM #1], **35 WOODMAN
AVE, PANORAMA CITY, CA, 91402,USA. REC:
ROBERTO SANTANA, 109 WILLIAM ST, NEWARK,
NJ,07102, USA. AMT: $1500.[1]

The 10-digit "MT" number is a Western Union transaction number. The text message indicates that the Western Union transaction number 3973019070 pertains to a transfer of $1,500 from Victim #1 to an individual using the name "Roberto Santana."

On or about June 16, 2011, a victim complaint was submitted to the IC3 complaint system[2] by Victim #1, at the same address indicated in the above text message. The IC3 complaint indicates, in substance, that Victim #1 corresponded with an individual named "Mark" regarding the purchase of a vehicle over Craigslist. After agreeing to purchase the vehicle for $2,750, Victim #1 and his/her spouse sent the money to a "Roberto Santana," which name they had received via an email that was purportedly from "eBay Buyback Protection." Victim #1 indicates in his/her

---

[7] Please see the attached Indictment for further information as described on the face of the indictment.
[8] Please see the copy of the attached Motion.

complaint that, in subsequent email correspondence, he/she was advised that he/she needed to send another $1,500 "as a guarantee to ship the car." Accordingly, on June 13, 2011, Victim #1 sent another $1,500 to "Santana." After sending the $1,500 installment, Victim #1 reported, in substance and in part, that he/she cannot "get an answer" from Santana, "and there's no car in my possession."

Based on this message, three other similar text messages sent to the 201 Cell Phone from Romania between June 10, 2011 and June 13, 2011, and text messages between the 201 Cell Phone and Romania on June 26 and June 27, 2011, concerning additional transfers of money, the government obtained a warrant, signed by the Honorable Lois Bloom on July 5, 2011, for location information concerning the 201 Cell Phone.

On July 11, 2011, FBI agents conducted surveillance in Irvington, New Jersey, based on location information obtained pursuant to warrant. Late that morning, agents witnessed three black males drive in the Toyota Avalon to a street that included a store with a Western Union sign out front. Agents witnessed the men enter and exit the store with the Western Union sign. Based on the location information, the agents believed that one of the males was carrying the 201 Cell Phone.

That same morning, FBI agents visited multiple Western Union pickup locations in the vicinity of Irvington, New Jersey, and obtained store video and transaction documents for money pickups from June and July 2011 for the transactions referenced in text messages sent to the 201 Cell Phone. The agents viewed the store video and observed that one transaction was conducted by an individual later identified as the defendant Ojo.

FBI agents continued surveillance that day in Irvington, New Jersey. They observed the Toyota Avalon, now with just one individual in the car, in Irvington, New Jersey. Using the location information for the 201 Cell Phone, FBI agents confirmed that the 201 Cell Phone was inside the Toyota Avalon. It was later determined that the driver, who was the sole occupant of the car, was the defendant Ojo.

FBI agents then requested that the New Jersey State Police conduct a traffic stop of the Toyota Avalon. Between approximately 3:15 and 3:30 p.m., New Jersey State Police joined the surveillance while the Toyota Avalon was parked in Irvington, New Jersey. New Jersey State Police witnessed the defendant get into his car and begin driving without putting on his seat belt.

The State Police then pulled over the Toyota Avalon. During the traffic stop, the defendant was unable to present a valid drivers' license. Instead, he presented a foreign identification card. While Ojo was in the drivers' seat during the traffic stop, an FBI agent approached the car and dialed the telephone number for the 201 Cell Phone. The FBI agent heard the phone ringing on his end of the conversation, saw Ojo reach over to his phone, press a button on the phone, and put it down. The FBI agent then heard the call disconnected on his end. Another FBI agent, who had watched the Western Union store video that morning, observed that Ojo matched the physical description of an individual he had seen on the video.[9]

14. On or about June 11, 2012, the district court at the Eastern District of New York, Brooklyn, conducted a factual hearing on the suppression hearing motion. At the suppression hearing, the government invited and presented, among other, Hugo Ribeiro, as a witness. However, Trooper Hugo Ribeiro came and testified falsely in corroboration of the prosecution's expanded and fabricated facts. In particular, Hugo Ribeiro testified and corroborated that on July 11, 2011, himself and others were mobilized to go and stop my vehicle for the FBI. Hugo Ribeiro further testified, falsely, and claimed that he parked at Ball

---

[9] Please see the attached copy of government's opposition to motion.

Street and saw that I started driving without a seatbelt on[10]; that he ONLY cited me for **Unlicensed Driver** when he realised that I had no driver's license.[11] However, he produced a forged traffic ticket summons for Unlicensed Driver[12] and a doctored CAD Abstracts[13] and his own Patrol Chart[14] in support of his claims. Unfortunately for him and the prosecution team, the produced CAD Abstracts and his own Patrol Chart t clearly indicated on their faces that the only statute cited for the stop was failure to wear a seatbelt in violation of N.J.S.A. 39:3-76.2f.[15]

15. On August 9, 2012, AUSA Douglas Pravda (AUSA Pravda), the prosecutor on the case, drafted a plea agreement that was signed by all the parties including himself, myself and my attorney. The guilty plea hearing was conducted and the prosecution represented to the court that the crime was committed between on or about June and July 2011. The made record that she found that the crime was committed between on or about June and July 2011 and accepted the plea of guilty unconditionally.

16. On or about November 2012, the Probation Office prepared Pre Sentence Report for my sentence and allegedly claimed that evidence supported that the crime was committed between June and July 2011.

17. On April 19, 2013, AUSA Pravda responded in opposition to motion to withdraw plea of guilty made by the defense counsel on my behalf and stated in the response that the crime was committed between on or about June and July 2011.

18. On April 24, 2013, the Court set aside the conviction obtained by the August 9, 2013 guilty of plea.

19. On May 14, 2013, AUSA Pravda, suddenly, sought and obtained a superseding indictment that alleged that the crime was committed between on or about May and July 2011.

20. On June 5, 2013, the superseding indictment was dismissed without prejudice and AUSA Pravda sought and obtained another indictment that alleged that the crime was committed between on or about April and July 2011.

21. In light of the above referenced documents and proceedings that inconsistently claimed, particularly under the oath before the court by and through an officer of court, AUSA Pravda, different period of times for the commission, it clearly raised a credibility issues against the prosecution's claims for probable cause for the arrest and prosecution of the petitioner herein. Therefore, the defense counsel and the court has duty to call for explanation of the inconsistencies and discrepancies on the prosecution's position as when the information of the alleged wiretap was actually linked with the petitioner herein. But unfortunately the court and defense counsel failed to call for and/or allow explanation and/or hearing whatsoever on the inconsistencies and discrepancies in violation of petitioner's fundamental rights to fair trial and due process and in violation of several Amendments under the United States Constitutional including First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.

22. At trial on August 8, 2013, during rebuttal, AUSA Pravda proffered alleged content of my phone record allegedly extracted by one FBI agent. The proffered portion indicated that text message was exchanged in March 2011 showing that petitioner allegedly requested that someone from Nigeria should help me make a driver's license. Allowing such evidence without objection from the defense counsel violated petitioner's right to fair trial and did constructively amended the charging instrument. Petitioner was actually denied fair notice by allowing the evidence that span beyond the period of charging instrument and the said evidence was significant, incredible and caused petitioner to be wrongfully convicted.

23. At trial on August 5, 2013, one of the alleged victim to the alleged fraudulent scheme, MEGAN ORTON, the prosecution's witness, opened the trial as the first witness and testified at trial based upon how she was defrauded and claimed that the presented E-mails are the E-mails that she exchanged with Joseph Wright

---

[10] Please see the attached excerpts of his testimony and you will understand that it's impossible for someone to see that someone started driving without a seatbelt from where he claimed that he positioned himself.

[11] See the attached as Exhibit A, excerpts of Hugo Ribeiro's testimony.

[12] See the attached as Exhibit B, Copy of the forged Traffic Ticket Summons for Unlicensed Driver.

[13] See the attached as Exhibit C, Copy of the fabricated CAD Abstract

[14] See the attached as Exhibit D, Copy of his own fabricated Patrol Chart

[15] On December 23, 2016, I made inquiry in the Irvington Municipal Court for the record of the summons allegedly for the Unlicensed Driver citation. However, the supervisor in the Municipal Court, Ms. Bracewell, attended to me and told me that there was never any such ticket filed on against my name.

and that the offered E-mails pages represented fair representation of the E-mails that she exchanged with Joseph Wright during the course of her conversation about the car purchase. Furthermore, MEGAN ORTON testified that she believe that she was corresponding with Joseph Wright at Wright.Joseph@verizon.net. The defense counsel unreasonably allowed the evidence despite showing visibly on the face of the evidence that there are several inconsistencies and discrepancies. For instance, MEGAN ORTON claimed that she believe that she was corresponding with Joseph Wright at Wright.Joseph@verizon.net. However, it was only on one occasion the proffered alleged e-mail exchanges corresponded with MORGAN ORTON. Other correspondences as shown on the alleged e-mail exchanges were corresponded with another e-mail address, joseph.wr@msn.com. The court and the defense attorney clearly saw the inconsistency and failed to call for explanation and/or allow hearing as to the credibility of the evidence in violation of petitioner's fundamental right to fair trial and rights under the United States constitutions including Fifth and Sixth Amendments.

24. Meanwhile, after the trial, I was able to obtain the record of trial that were withheld from me by the trial counsel, Ephraim Savitt, Esq. I detected that there were so much inconsistencies in the proffered E-mails exchanges. I complained to the Court and requested for hearing on those inconsistencies and discrepancies on the face of those proffered E-mails. However, AUSA Pravda invented opinion, represented himself as a forensic e-mails expert and provided his opinion to explain the discrepancies and inconsistencies on the face of the proffered e-mail messages. Without no effort by my defense attorney, the Court accepted AUSA Pravda's opinion as equal to forensic e-mails expert and denied my request for hearing on the unexplained discrepancies and inconsistencies. The court and the defense counsel failed to call forensic e-mails expert to determine the credibility of the e-mails in violation of petitioner's rights to fair trial.

25. Moreover, AUSA Pravda's claims that the original e-mail address, briteeorange@aol.com, where the alleged exchanges was allegedly made was no longer accessible because MEGAN ORTON allegedly stopped using her AOL e-mail account and began using a Google Gmail account is dubious at best. Not only that there's no evidence in the record that supported that than AUSA Pravda's argument in response to my request for hearing. Moreover, the prosecution has the duty to disclose every inculpatory and exculpatory evidences to accused defendant under federal laws. Particularly, Brady materials requires the prosecutor to disclose evidences upon request by defendant under Section 3500. Petitioner did file motions for discovery prior to trial and was unreasonably denied by the court. Moreover, defense counsel, Ephraim Savitt, don't appear to understand what the Brady law means to criminal defendant by his silence to AUSA Pravda's claims that the original evidence was no longer available but that other evidence, allegedly, that was available was offered and presented to the jury as the original. Petitioner herein contend that he had been denied his fundamental right to fair trial by the concealment of the facts during the trial, by defense counsel's failure to investigate all the e-mail evidences by and through a competent forensic e-mails expert, by defense counsel's failure to object to all the e-mail evidences in the absence of the primary and/or original evidence as allowed under the rule of evidence, by defense counsel's failure to cross-examine those alleged victim witnesses and the law enforcement officers over the preservation of evidences and/or chain of custody of those alleged evidences. Moreover, the court violated petitioner's fundamental rights by unreasonably denying petitioner's motion for discovery and by allowing the defense attorney that was performing incompetently before it to continue to represent petitioner despite the fact that petitioner had complained of conflict of interest and bias against the attorney.

26. In addition, petitioner requested during trial that he would like the prosecution to provide the original evidence of his phone contents because petitioner believe that the phone contents were doctored to inculpate petitioner. The prosecution claimed that there was no charger to power the cell phone during the trial without stating what actually happened to the means of powering the phone during the time they were allegedly extracting the alleged contents. The defense counsel advised the court to make record of it that petitioner will be allowed to compare the original evidence with the alleged extraction prior to sentencing if there's conviction, the court noted the point. However, after the jury's verdict, defense

counsel and the court denied petitioner opportunity to compare the original with the alleged extracted copy of the photo content evidence. In light of the series of fabrications, inconsistencies, discrepancies and concealments as analysed herein, there's no doubt that comparing the original evidence with the alleged extraction of the phone contents will yield evidence that will establish prosecutorial misconducts. Denying petitioner of his right to compare the original evidence with the alleged extraction copy clearly denied petitioner established fundamental rights to fair trial and other rights under the United States constitutional amendments including Fifth, Sixth and Fourteenth and the due process of law.

27. Furthermore, the court went further and sentenced me to 37 months in prison and 3 years Supervised release. The court further ordered restitution of approximately $92,152 and forfeited my $6,580 cash.

28. Ojo's trial counsels did not meet even their modest constitutional obligations in their representation of Ojo. The attorneys' multiple failures, of both omission and commission, caused Ojo irreparable damage at trial. For example, in one of many transgressions, counsels failed to investigate the inconsistencies in the alleged period of commission of the crime and the claim that wiretap evidences were obtained prior to the arrest of Ojo on July 11, 2011. Although counsel sought and acquired an order from the trial court authorizing funds for and did hire an investigator but counsel inexplicably failed to investigate any of the facts that can corroborate his argument at trial.[16] None of the inconsistencies that are apparent on the case against me was investigated and/or raised by the counsel. This failures were not one of strategy, but of sloth. Had counsels adequately performed their job, there is more than a reasonable probability that I would not have been convicted and sentenced to a term of 37 months and 3 years of supervised release, and there would be no exposure to approximately $92000 restitution and $6500 forfeiture against me. Moreover, I will not have been exposed to deportation as it is this day.

29. The trial court also must share blame for the unjust conviction of Petitioner Ojo. The court failed to ensure that the indigent and a foreigner defendant that stands before it received a fair trial. Among other errors, the court failed to order its own inquiry into the defendant's cry of prosecutorial misconduct particularly based on the forged; it failed to overrule prosecution's objections to findings of facts at suppression hearing when it should have; it allowed improper and inconsistent testimonies and argument by the state's witnesses and the prosecutor; and it failed to properly instruct the jury on the definitions of the crimes in the indictment. Indeed, the trial court initially rules and erroneously allowed the use of compelled involuntary statements but for the prosecution to later admit that the whole statements were involuntary.

30. The end result of this series of injustices by defense counsel, the prosecutor, and the district court was that Ojo was denied a fundamentally  fair trial and the effective assistance of counsel. This Court must intercede to correct these and other errors by granting a writ of *__habeas__ __corpus__* and ordering that Ojo receive a new trial, hearing as necessary and/or dismissed the complaint.

### GROUNDS FOR RELIEF

GROUND I

PETITIONER OJO WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT ALL STAGES OF HIS TRIAL AND SUBSEQUENT APPELLATE PROCEEDINGS IN VIOLATION OF THE FIFTH,  SIXTH,  EIGHTH  AND  FOURTEENTH  AMENDMENTS TO  THE  UNITED  STATES CONSTITUTION

---

[16] Counsel's defense argument at trial was that if it doesn't fit you must acquit - trying to borrow the language used by the defense counsel, Johnnie Cochran, in the popular O.J. Simpson case. Meanwhile in O.J. Simpson case, while the prosecution spent most of its closing statement piecing together its theory of how the murders occurred as done in this case, Cochran emphasized inconsistencies in the state's evidence. Those included a luggage strap apparently moved before evidence was photographed and a sticky glove that Cochran said should not have been moist with blood seven hours after the murders.

31. The United States deprived Petitioner of his right to the effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. The Constitution affords all citizens facing criminal charges the right to counsel to assist in their defense. *Gideon v. Wainwright, 372 U.S. 335 (1963).* "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command." *Strickland v. Washington, 466 U.S. 668, 685 (1984).* Instead, a criminal defendant is denied his constitutional right to counsel if counsel does not provide representation that satisfies prevailing professional norms. *Id. at 688* ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). Under *Strickland*, an ineffective assistance of counsel claim requires the showing that (1) counsel's performance was deficient and (2) that deficient performance prejudiced the defense. *Id. at 687.* Trial counsel's performance is deficient when it "f[alls] **[*21]** below an objective standard of reasonableness," which is defined as "reasonableness under prevailing professional norms." *Id. at 688;see also, Wiggins v. Smith, 521 U.S. at 521,Rompilla v. Beard, 545 U.S. 374 (2005);Porter v. McCollum, 558 U.S. 30 (2009).* On the other hand, a petitioner suffers prejudice where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, 466 U.S. at 694;see also Williams v. Taylor, 529 U.S. 362 (2000).*

32. Petitioner Ojo was denied his right to effective assistance of counsel at his trial and on appeal. Multiple deficiencies in trial counsel's representation prejudicially impacted the outcome at Petitioner's trial and on appeal. For example, trial counsel was ineffective, among other reasons, for (i) failing to explore Petitioner's positive character evidence for use at trial; (ii) failing to raise objections to multiple improper questions by the prosecutor; (iii) failing to effectively cross-examine state witnesses Morgan Orton, Marie Chavez, Michael Shotwell, An N. Luong, Brian Ennesser, Michael Bikings, Scott Urben, Matthew Nahas, Hugo Ribeiro; (iv) failing to seek a mistrial during the prosecutor's improper closing argument; (v) failing to present a compelling alibi defense; and (vi) failing to prepare for or properly advise Petitioner about his decision to testify during the trial; (vii) failing to dismiss indictment for prosecutorial misconduct of knowing using false evidence; (viii) failing to move for vacation of conviction for prosecutorial misconduct of violating Brady material; (ix) failing to call available witness on behalf of petitioner; (x) failing to investigate; (xi) failing to prepare plaintiff for trial. Appellate counsel was ineffective, among other reasons, for failing to raise the cross-examination issue outlined above. Trial and appellate counsel's unreasonable omissions and commissions, separately and cumulatively, were prejudicial to Petitioner. But for such errors, there is a reasonable probability that the result of the trial and appeal would have been different. Because the trial courts have failed to correct these constitutional violations, Petitioner respectfully requests that this Court grant Petitioner the requested relief.

33. The Second Circuit Court's holding that trial counsel's performance was constitutionally sufficient is contrary to and an unreasonable application of clearly established federal law as reflected in the precedents of the United States Supreme Court. *Lewis, 608 S.E.2d at 610-611.* Moreover, the Second Circuit Court based its determination and affirmance of that trial court's judgment of conviction on a number of inaccurate and unreasonable factual determinations. *Id.* For these reasons, ***habeas*** relief is appropriate here under *28 U.S.C. §§ 2255.*

## GROUND II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO ORDER *SUA SPONTE* AN EVIDENTIARY HEARING BASED UPON INCONSISTENCIES AND DISCREPANCIES ON THE FACE OF THE EVIDENCES OFFERED BEFORE IT IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

34. A trial court's failure to make an inquiry on this topic, even *sua sponte*, may deprive a defendant of his constitutional right to a fair trial. The trial court in Petitioner's case made mistake.

35. As described above, it was clear on the face of most of the evidences proffered before the court that there are discrepancies. Petitioner, though without the support of defense counsel, repeatedly cried foul of these

evidences and that they were fabricated. There's no doubt that there are facially inconsistencies. Explanation by the prosecution alone without an expert cannot suffix to sustain the credibility of those evidences under fair trial rules. However, the trial court committed several reversible error by allowing those conscionable evidences to be used to obtain conviction before it.

GROUND III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING PETITIONER'S MOTION FOR NEW SUPPRESSION HEARING AFTER THE DISMISSAL OF THE INITIAL CASE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

36. The first case titled 11-cr-570 was dismissed entirely on or about June 5, 2013. The prosecution started another case on the same day. However, the court transferred the whole record and proceedings in the case that was dismissed in the first case, including the suppression hear, bail hearing and motions, to the second case as if they were conducted in the new case. Petitioner, requested for new suppression hearing due to the fact that there are changes as to the case including the fact that prosecution had made inconsistent claims pertaining to the period of crime. Such claims suggested that the initial claims in support of probable cause has been expanded and needs further inquiry as to the factual basis for the probable cause on the new indictment. However, the trial court unreasonably and unfairly denied petitioner from moving for suppression hearing.

GROUND IV

THE PROSECUTOR AND OTHER STATE AGENTS IMPROPERLY WITHHELD MATERIAL AND EXCULPATORY EVIDENCE FROM THE PETITIONER IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER *BRADY V. MARYLAND, 373 U.S. 83 (1963)*

37. As described above, the prosecution offered e-mail evidences allegedly exchanged between victims witnesses and the alleged schemer. The prosecution did not produce original evidence on any of the e-mails evidences that it offered and the defense counsel failed to object to them. However, after the trial the petitioner was able to detect that the e-mails evidence offered by those that claimed to be victims of fraud were facially incredible due to several inconsistencies. The petitioner then moved for factual hearing on those e-mails evidences. The prosecutor, AUSA Pravda, responded and claimed among other things that one of the victims witnesses, MEGAN ORTON, had stopped using her e-mail address between the period when she was allegedly defrauded and the time of trial and due to that she was unable to present the e-mail evidence from the original e-mail address. That the e-mails exchanges that was presented to the jury were a forwarded e-mail messages from another e-mails address and not the original messages.[17] AUSA Pravda's claim suggested that there were interviews and investigations pertaining to those e-mails prior to the trial in the case. However, there was no discovery or evidence on the record that ever suggested that such information were previously provided to petitioner or his counsel before trial. Those evidences would have gone far in demonstrating to the jury that the alleged e-mail can easily be altered in the cause of forwarding it within two different e-mail accounts and could not be verified due to the absence of the original. Long before the trial, Petitioner filed a motion pursuant to *Brady v. Maryland, 373 U.S. 83 (1963)*, and its progeny, demanding the prosecutor turn over all exculpatory material in the state's possession. However, the prosecutor never disclosed this powerfully exculpatory evidence to Petitioner. Several months after the trial when the inconsistencies pertaining to the e-mail evidences were raised, AUSA Pravda came up with excuse that the e-mails were not the original as presented but

---

[17] Though those e-mails were presented to the jury as if they were the original messages that was actually exchanged.

forwarded e-mails. There can only be either the presentation of the e-mails exchanges violated prosecutorial misconducts of knowing use false evidence or violation of discovery rule. Petitioner had raised this issue before the trial court but the trial court erroneously concluded that the evidence is credible. Even if credible, which is not, it clearly violated petitioner's fair trial under discovery laws and rukes.

GROUND V

MISCONDUCT BY THE PROSECUTOR AND OTHER STATE AGENTS DEPRIVED PETITIONER OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER *BRADY V. MARYLAND, 373 U.S. 83 (1963),KYLES V . WHITLEY, 514 U.S. 419 (1995),GIGLIO V. UNITED STATES, 405 U.S. 150 (1972), AND NAPUE V. ILLINOIS, 360 U.S. 264 (1959)*

38. Throughout Petitioner's trial and sentencing proceedings, the state injected all manner of impermissible, improper, and inflammatory matters. The state's misconduct included, but was not limited to, the following: the prosecutor induced harmful, inadmissible hearsay evidence; and the prosecutor withheld critical, exculpatory evidence from the Petitioner and his counsel prior to and during the trial. The prosecutor's shockingly improper behavior was extraordinarily harmful and, in the end, deprived Petitioner of his right to due process of law, among other rights. These instances of prosecutorial misconduct, both standing alone and cumulatively, are sufficient to warrant reversal of Petitioner's conviction.

<u>CONCLUSION</u>

For all of the reasons stated above, Petitioner prays that this Court:

1. Conduct a hearing at which proof may be offered concerning the allegations of this petition;

2. Permit Petitioner, who is indigent, to proceed *in forma pauperis;*

3. Appoint a *pro bono* counsel to represent Petitioner in this action;

4. Allow discovery pursuant to Rule 6 of the *Rules Governing Section 2255 Cases in the United States District Court;*

5. Grant Petitioner the authority to obtain subpoenas *in forma pauperis* for witnesses and documents necessary to prove the facts as alleged in this petition;

6. Allow Petitioner to amend this petition following discovery;

7. Allow Petitioner a reasonable opportunity to brief the issues of law raised by this petition;

8. Grant such other relief as may be appropriate.

Dated: This the 22 day of March 2017.

Respectfully submitted,

Olukayode David Ojo
120 Chestnut Street
East Orange, NJ 07018
Phone #: (848) 444-7434
E-mail: olukojod@gmail.com

**UNITED STATES POSTAL SERVICE**

Retail

**US POSTAGE PAID**

**$6.65**

**P**

Origin: 07018
Destination: 11201
0 Lb 15.70 Oz
Mar 22, 17
3323600242-08

1006

**PRIORITY MAIL ®1-Day**

Expected Delivery Day: 03/23/2017   C013

**USPS TRACKING NUMBER**



9505 5154 2217 7081 0280 60

FROM:

Ohikayode David Ojo
120 Chestnut Street
East Orange NJ 07018

TO:

Clerk of Court
Pro Se Office
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

PS00001000014

EP14F July 2013
OD: 12.5 x 9.5

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE



**UNITED STATES POSTAL SERVICE**