

U.S. Department of Justice

United States Attorney
Eastern District of New York

DMP/MEG  
F. #2013R00887

271 Cadman Plaza East  
Brooklyn, New York 11201

April 7, 2017

By Hand and ECF

The Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. David Ojo  
                Civil Docket No. 17-1652 (ARR)  
                Criminal Docket No. 13-334 (ARR)

Dear Judge Ross:

      The government respectfully submits this letter brief in opposition to petitioner David Ojo's motion to vacate his convictions pursuant to 28 U.S.C. Section 2255.

      In ground one of his petition, Ojo raises an ineffective assistance of counsel claim with respect to his representation both on trial and on appeal. That is the only claim that is properly raised on the instant 2255 petition. However, that claim fails on the merits, as discussed below. Ojo's remaining claims are all procedurally defaulted, but they too fail on the merits as well. For these reasons, Ojo's motion to vacate his convictions should be denied.

I.      Factual Background

      On August 8, 2012, following a four-day trial, a jury found the defendant David Ojo guilty of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, and conspiracy to commit fraud in connection with identification documents, in violation of Title 18, United States Code, Section 1028(f).

      A.    Ojo's Offense and Conviction

      The testimony at trial established that, between April 2011 and July 2011, Ojo participated in a fraudulent scheme in which more than 30 victims were defrauded of more than $90,000.

Three individuals who fell victim to the fraudulent scheme – Megan Orton, Marie Chavez and Michael Shotwell – testified at trial. Each of these victims testified that he or she sought to purchase a vehicle listed for sale on Craigslist; each communicated with the purported seller by e-mail; in each instance the purported seller insisted on executing the transaction through e-Bay; each victim was directed by a purported e-Bay agent through e-mail correspondence to wire transfer money to the e-Bay agent using Western Union; and, even though each of the victims wire-transferred the agreed upon amount of money through Western Union as directed, none of the victims received the vehicles that he or she had been promised or a refund of the expended money.

The government introduced evidence at trial showing that, for each of the Western Union wire transfers that Ms. Orton, Ms. Chavez and Mr. Shotwell sent in order to pay for the cars they believed they were purchasing, text messages containing those individuals' wire transfer information (i.e., the victim's name and address, the dollar amount sent, and the person to whom it was sent) were forwarded to the defendant. In addition, the government presented evidence obtained pursuant to wiretaps executed by Romanian authorities, as well as a search of the defendant's phone, which revealed that there were additional victims of this fraudulent scheme who had sent money by way of Western Union.

The government introduced evidence at trial that Ojo personally picked up a number of these fraudulent wire transfers at Western Union locations, and that he possessed multiple fraudulent driver's licenses at the time of his arrest that were used to facilitate the money pick-ups. Moreover, the government introduced evidence showing that Ojo's role was not limited to picking up money at the behest of others, but included: (a) instructing others to do money pick-ups; (b) creating fraudulent driver's licenses; and (c) coordinating the transfer of money to co-conspirators overseas. In addition, the government introduced evidence at trial showing that after his arrest, Ojo sent text messages to another person, understood to be his girlfriend, directing her to destroy evidence.

Based on all of this evidence and the other evidence presented at trial, the jury found that the government had proven Ojo's guilt on both the wire fraud and identification document conspiracy charges.

B.  Ojo's Appeal

Ojo subsequently appealed his conviction to the Second Circuit Court of Appeals. See Court of Appeals Dkt. No. 14-635. Ojo was represented on appeal by counsel, who submitted a comprehensive brief arguing that there was insufficient evidence to support the convictions and that the district court (a) improperly instructed the jury with respect to an element of 18 U.S.C. § 1028(a)(3); (b) improperly admitted Ojo's statements to law enforcement and evidence seized from his car; (c) erred in failing to dismiss the indictment with prejudice after finding that a speedy trial violation had occurred; and (d) erred by failing to grant Ojo's pro se motions. See id. Dkt. Entry 63.

In addition, Ojo submitted a pro se supplemental brief, in which he raised a number of additional issues, many of which he raised pro se in district court. See id. Dkt. Entry 86. Specifically, Ojo claimed that (a) the government relied on perjured testimony before the grand jury; (b) the government presented perjured testimony during the suppression hearing; (c) the government presented perjured testimony at trial; and (d) the district court erred in failing to grant him a hearing on his claim that he was coerced into pleading guilty and to dismiss the second indictment on double jeopardy grounds.

The parties appeared for oral argument before the Second Circuit on November 12, 2015. On November 19, 2015, the Second Circuit issued a Summary Order affirming the judgment of the district court. United States v. Ojo, 630 Fed. Appx. 83 (2015). In the Order, the Second Circuit considered and rejected each of Ojo's challenges to his convictions, including those raised in his pro se submission. Id. at 84-86. Among its holdings, the Second Circuit held that there was sufficient evidence to support the convictions and affirmed the district court's denial of Ojo's motion to suppress the evidence seized during the stop of his car. Id. at 84-85.

On February 5, 2016, Ojo filed a petition for writ of certiorari to the Supreme Court of the United States. Ojo's petition was denied on March 21, 2016. Ojo v. United States, 136 S. Ct. 1473 (2016).

II.   Legal Standard on a Motion to Vacate a Conviction Under Section 2255

   A.   Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) he was prejudiced by counsel's deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); see also United States v. Jones, 482 F.3d 60, 76 (2d Cir. 2006). This two-prong Strickland standard is "highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and judicial scrutiny "must be highly deferential" in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89. As a result, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and quotation marks omitted) (quoting Strickland, 466 U.S. at 689). The court "must view the defendant's claim through the eyes of trial counsel, not through 'the distorting effects of hindsight.'" United States v. Javino, 960 F.2d 1137, 1145 (2d Cir. 1992) (quoting

3

Strickland, 466 U.S. at 689); see also Kimmelman, 477 U.S. at 382 ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."). "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." Id. (quoting Michel v. State of Louisiana, 350 U.S. 91 (1955)).

As to the second prong of Strickland, a petitioner must show that, but for his attorney's deficient performance, there is a reasonable probability that the result would have been different. Strickland, 466 U.S. at 694. Indeed, the "ultimate focus of the inquiry" is "whether the result of the particular proceeding is unreliable because of a breakdown in the adversarial process." Id. at 696. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693. A defendant's speculative arguments about an error's impact on the result of the proceeding do not establish prejudice. See United States v. Weiss, 930 F.2d 185, 199 (2d Cir. 1991). Where there is overwhelming evidence of a defendant's guilt, it will be even more difficult for a defendant to meet the prejudice standard. See, e.g., United States v. Reiter, 897 F.2d 639, 645 (2d Cir. 1990) (even though defense counsel's failure to move to suppress evidence, poor cross-examination and frequent lateness and absences fell below professionally reasonable standards, the defendant could not prevail on a claim of ineffective assistance because there was overwhelming evidence of defendant's guilt).

B. Issues That Were or Could Have Been Raised on Direct Appeal Are Barred

A defendant may not raise by collateral attack issues that were already decided against him on direct appeal. Nor may a defendant raise by collateral attack issues that could have been, but were not, raised on direct appeal, absent a showing that Ojo does not even attempt to make.

Issues that were raised on direct appeal may not be raised again in a collateral attack. See, e.g., United States v. Pitcher, 559 F.3d 120, 124 (2d Cir. 2009); Riascos–Prado v. United States, 66 F.3d 30, 33 (2d Cir. 1995); Schwamborn v. United States, 492 F. Supp. 2d 155, 160–62 (E.D.N.Y. 2007).

Moreover, "a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011). "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." Id.; see also Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error."); Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992) ("[F]ailure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice.").

4

III.     Ojo's Petition to Vacate His Conviction Should Be Denied

Ojo's petition to vacate his conviction should be denied. Ojo cannot meet either part of the demanding Strickland standard with respect to his complaints about ineffective assistance by his trial and appellate counsel. And Ojo's remaining claims are both procedurally barred and meritless.

A. Ojo's Ineffective Assistance Claims

1. Trial Counsel Was Not Ineffective

Ojo raises a host of complaints against trial counsel Ephraim Savitt, Esq.. most of which relate either to trial preparation or to the conduct of the trial itself.

As an initial matter, the government notes that Mr. Savitt was a highly effective advocate for the defendant. Ojo had complained repeatedly about prior counsel, both retained and CJA-appointed, including Eric Schlosser, Alan Seidler, and Jeremy Orden, all of whom are highly respected advocates who appear frequently in criminal cases in the Eastern District of New York. Mr. Savitt was appointed by this Court at a time when the defendant had pleaded guilty and was seeking to withdraw his plea. Mr. Savitt moved on the defendant's behalf to withdraw his guilty plea, a motion that was granted over the government's objection, thus confirming the effective representation that Mr. Savitt provided to the defendant.

Mr. Savitt continued to represent Ojo through trial, during which he advanced a defense on Ojo's behalf in the face of overwhelming evidence of Ojo's guilt. The Court has already noted Mr. Savitt's effective representation. Just before summations began, Ojo requested to address the Court on the record, contrary to Mr. Savitt's advice. The Court advised Ojo not to do so, and stated the following:

> I think, Mr. Ojo, you have been very well served in this trial by your lawyer. He knows far better than you what is going to help you and what is going to hurt you and I strongly suggest that you speak with him. If he has already told me what you wanted to tell me, fine. If there is something else that you think is important, you tell him. Okay? I am going to give you a few minutes, but we cannot hold the jury up much longer.

(Tr. 685). Having presided over the pre-trial proceedings and trial, the Court is, of course, more than familiar with Mr. Savitt's effective representation of Ojo. Nevertheless, should the Court wish to hear from Mr. Savitt in response to Ojo's claims of ineffectiveness, the Court may issue an order directing Mr. Savitt to respond to the allegations raised in the Section 2255 petition. See Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998).

As the government now discusses, Ojo's claims of ineffectiveness fail.

5

a. <u>Ojo's Claims of Ineffectiveness in Trial Preparation</u>

With respect to trial preparation, Ojo contends – without providing any supporting details – that trial counsel was ineffective for failing to investigate Ojo's case and failing to prepare Ojo for trial. (Pet. ¶ 32).

It is well-settled that general and conclusory claims of failures in trial preparation are insufficient under <u>Strickland</u>. For example, "[i]n order to assert a colorable claim for the failure to investigate, a 'petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation.'" <u>Mavashev v. United States</u>, No. 11-CV-3724 (DLI), 2015 WL 1508313, at *11 (E.D.N.Y. Mar. 31, 2015) (internal citations omitted). "Moreover, [a] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." <u>Id.</u> (internal quotation marks omitted). Ojo does not meet that standard.

Here, Ojo argues that trial counsel "failed to investigate any of the facts that can corroborate [Ojo's] argument at trial." (Pet. ¶ 28). However, Ojo points to no specifics in support of that claim, such as "what leads counsel should have followed in such an investigation, the nature of evidence that could have been discovered or presented, or what possible witnesses should have been contacted, much less how any of this would have revealed exculpatory information or been otherwise helpful to his case." <u>Polanco v. United States</u>, No. 99-CV-5739 (CSH), 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) (rejecting ineffective assistance claim because "undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either <u>Strickland</u> prong") (citing cases); <u>see also</u> <u>Paige v. Lee</u>, 99 F. Supp. 2d 340, 349-50 (E.D.N.Y. 2015) ("Because petitioner's claim of ineffective assistance of counsel based on failure to investigate is simply too vague and conclusory to state a proper ground for habeas relief under either <u>Strickland</u> prong, it must be dismissed as meritless.").

Ojo also argues that trial counsel failed to investigate "the inconsistencies in the alleged period of commission of the crime and the claim that wiretap evidences were obtained prior to the arrest of Ojo on July 11, 2011." (Pet. ¶ 28). Ojo's argument that there were inconsistencies in the period of commission of the crime stems from the government's expansion of the dates of the charged wire fraud conspiracy. For instance, the initial indictment charged a conspiracy from June 2011 to July 2011, whereas a superseding indictment charged a conspiracy from April 2011 to July 2011. However, Ojo fails to realize that the government continued to investigate his crimes following his initial arrest and developed additional evidence of his participation in those crimes during a broader time period. To cite just one example of the government's continuing investigation, the government seized Ojo's phone from him at the time of his arrest. Evidence found on Ojo's phone pursuant to a subsequent search showed that Ojo had sent text messages in April 2011 containing Western Union wire transfer information that was similar to that contained in the results of the Romanian wiretap. Such new information was part of the basis on which the

government expanded the time period of the indictment to include April 2011. Ojo offers no explanation of what trial counsel should have investigated nor anything that trial counsel would have learned that undermines confidence in the jury verdict. Accordingly, Ojo's claim for failure to investigate should be denied. See, e.g., United States v. Wilson, 146 F. Supp. 3d 472, 480 (E.D.N.Y. 2015) (rejecting ineffective assistance claim for failure to investigate where petitioner did not provide evidence that would undermine confidence in the jury verdict).

### b. Ojo's Claims of Ineffectiveness in the Conduct of the Trial

With respect to the conduct of the trial, Ojo contends that trial counsel was ineffective for failing to object to improper questions by the government, failing to effectively cross-examine virtually every government witness, failing to call available witnesses on Ojo's behalf, including alibi witnesses and positive character witnesses, and failing to properly advise Ojo about his decision to testify. (Pet. ¶ 32).

As a general matter, courts have consistently held that "actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." Kieser v. People of State of New York, 56 F.3d 16, 18 (2d Cir. 1995) (internal quotations omitted). Thus, when evaluating a claim of ineffective assistance based on trial performance, the Second Circuit has explained that "[t]he court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 697) (internal citations omitted). Applying those standards, none of Ojo's claims can satisfy either prong of the Strickland standard.

First, Ojo argues that trial counsel failed to object to improper questions by the government. But Ojo's brief identifies no such questions that he deems improper, much less explains on what grounds such questions were improper. See, e.g., United States v. O'Neil, 118 F.3d 65, 72-73 (2d Cir. 1997) (affirming district court denial of ineffective assistance claim that included a complaint that trial counsel failed to object to arguably improper questions by the government because the defendant "fails to identify any particularly damning evidence that could have been kept out of the trial had [counsel] objected"). Indeed, the Second Circuit has recognized that "trial decisions" such as "when to object and on what grounds are primarily matters of 'trial strategy and tactics,'" United States v. Cohen, 427 F.3d 164, 170-71 (2d Cir. 2005) (quoting Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997)).

Second, Ojo argues that trial counsel failed effectively to cross-examine virtually all of the government's witnesses. It is well-settled that "[d]ecisions about the scope and manner of cross-examination are considered 'strategic in nature and generally will not support an ineffective assistance claim.'" Stallings v. Woods, No. 04-CV-4714 (RLM), 2006 WL 842380, at *18 (E.D.N.Y. Mar. 27, 2006) (quoting Dunham v. Travis, 313 F.3d

7

724, 732 (2d Cir. 2002)); see also United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer," and a court "should not second-guess such decisions unless there is no strategic or tactical justification for the course taken."); United States v. Wilson, 146 F. Supp. 3d 472, 482-83 (E.D.N.Y. 2015) (rejecting ineffective assistance claim that trial counsel failed to effectively cross-examine government witnesses because trial counsel elicited points favorable to the defense); Drayer v. United States, 50 F. Supp. 3d 382, 393 (E.D.N.Y. 2014) (petitioner "fails to overcome the presumption that his [trial] counsel's choices on cross-examination might be considered sound trial strategy"); Mendez v. Connolly, No. 05-CV-1979 (DC), 2006 WL 464045, at *8 (S.D.N.Y. Feb. 23, 2006) ("A decision on what questions to ask during cross examination is a strategic decision and should be viewed deferentially."). As a result, "courts generally should not second-guess how a cross-examination was conducted 'unless counsel failed even to put on a defense, or to perform other basic elements of trial advocacy.'" Golding v. United States, No. 05-CR-538 (JSR), 2014 WL 2959296, at *8 (S.D.N.Y. July 2, 2014), report and recommendation adopted, No. 05-CR-538 (JSR), 2014 WL 4977481 (S.D.N.Y. Sept. 29, 2014) (quoting Garcia v. Kuhlmann, 897 F. Supp. 728, 730 (S.D.N.Y. 1995)). Here, trial counsel cross-examined each of the government's witnesses, seeking to challenge various aspects of their testimony. He did not fail to put on a defense or fail to cross-examine in a way that calls into question the effectiveness of his representation.

Third, Ojo argues that trial counsel failed to call witnesses on Ojo's behalf, including alibi witnesses and character witnesses. Notably, however, Ojo does not offer any alibi defense, much less provide the identities of any witnesses that he alleges should have been called on his behalf, whether as alibi or character witnesses. That alone is sufficient to defeat his claim. See Wilson, 146 F. Supp. 3d at 481-82 (rejecting ineffective assistance claim for failure to call character witnesses in part because petitioner did not identify those witnesses); Aller v. United States, No. 11-CV-9089, 2015 WL 1963611, at *7-8 (S.D.N.Y. Apr. 30, 2015) (rejecting claim of ineffective assistance based on failure to call an alibi witness where petitioner "has not set forth credible evidence that trial counsel was aware of, and failed to call, an actual alibi witness"); Krutikov v. United States, 324 F. Supp. 2d 369, 371 (E.D.N.Y. 2004) (rejecting claim of ineffective assistance relating to failure to call character witnesses because petitioner failed "to identify what witnesses should have been called, to what they could have testified, or how their testimony would have altered the outcome of the trial"); Moore v. United States, No. 97-CV-1267 (RR), 1998 WL 1967975, at *8 (E.D.N.Y. Mar. 31, 1998) (rejecting ineffective assistance claim based on counsel's failure to call alibi witness where the petitioner did not identify the potential witnesses nor submit affidavits from those witnesses).

Even if Ojo had identified the purported alibi and character witnesses and had set forth what their anticipated testimony would have been, courts reviewing ineffectiveness assistance claims based on decisions of which witnesses to call to testify at trial are extremely deferential to trial counsel's determinations. As a general matter, "[c]ourts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005).

8

"'[C]ounsel's decision as to whether to call specific witnesses–even ones that might offer exculpatory evidence–is ordinarily not viewed as a lapse in professional representation.'" Id. (quoting United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000)); Luciano, 158 F.3d at 660 ("decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second guess").

Thus, numerous courts have rejected ineffective assistance claims based on failure to call witnesses, even where the petitioner has presented information – which Ojo has not done – of which witnesses should have been called and what they would have testified. See, e.g., Krasniqi v. United States, 195 F. Supp. 3d 621, 630-34 (S.D.N.Y. 2016) (rejecting claim of ineffective assistance based on counsel's failure to call "several witnesses who could have provided alibi evidence and/or general character evidence"); Castellano v. United States, 795 F. Supp. 2d 272, 278-79 (S.D.N.Y. 2011) (rejecting claim of ineffective assistance based on failure to present an alibi witness even where petitioner offered an alibi through affidavit from mother of his children because it did not account for petitioner's whereabouts during the entire time period in question); Krutikov, 324 F. Supp. 2d at 371 (rejecting claim of ineffective assistance based on failure to present character witnesses because that is a strategic decision that is "rarely, if ever, the proper basis of an ineffective assistance of counsel claim").

Fourth, Ojo argues that trial counsel failed to properly advise Ojo about his decision to testify. Ojo offers no further information in support of that claim.

Ojo's failure to provide any specifics defeats his claim. "[V]ague and conclusory" assertions that a trial counsel failed to advise a defendant regarding his right to testify have been held to be insufficient to establish ineffective assistance of counsel. Castellano, 795 F. Supp. 2d at 280.

Moreover, the trial record belies Ojo's argument. The government rested at approximately 3 p.m. on August 7, 2013. Mr. Savitt then spent approximately 45 minutes discussing with Ojo whether he wished to testify in his own defense. Mr. Savitt then reported to the Court that he had had extensive discussions with Ojo about his decision whether to testify and that Ojo had determined not to do so. (Tr. 654-57). The Court then allocuted Ojo about his decision not testify. (Tr. 657-58). When the parties returned to Court for summations the following morning, Mr. Savitt advised the government that Ojo was reconsidering his decision not to testify. Ojo and Mr. Savitt then spoke for an additional period of time (the amount of which is not reflected on the record) before Mr. Savitt announced that they were ready to proceed.

Those are not the only consultations regarding Ojo's decision to testify. Indeed, Mr. Savitt had referred on multiple occasions throughout the pretrial and trial proceedings that he and his client were discussing these issues. When the Court allocuted Ojo on his decision not to testify, the Court inquired, "Mr. Savitt[] told me that you had made the decision not to testify in this case. I know this is something that you have been

9

discussing with him throughout; is that correct?" Ojo responded, "Yes, Your Honor." (Tr. 657).

In short, Ojo has failed to overcome "the presumption that defense counsel was effective and properly advised him of his right to testify." Al Kassar v. United States, No. 13-CV-3541 (JSR) (JLC), 2014 WL 1378772, at *10 (S.D.N.Y. Apr. 8, 2014) (Magistrate Report and Recommendation); Guidice v. United States. No. 03-CV-4983 (SJ), 2007 WL 1987746, at *14 (E.D.N.Y. July 3, 2007) (noting, in context of a claim that a defendant was denied his right to testify, that a defendant must overcome the presumption that defense counsel was effective and did not fail to advise the defendant of his right to testify). Given that Ojo has offered no specifics about trial counsel's alleged failure to properly advise Ojo about his right to testify, and given that the record confirms that Mr. Savitt and Ojo did in fact discuss his decision to testify, Ojo's claim should be denied.

### c. Ojo's Claims Related to Allegations of Prosecutorial Misconduct

Ojo also complains that trial counsel was ineffective for failing to seek a mistrial during the government's purportedly improper closing argument and failing to move to dismiss the indictment for prosecutorial misconduct relating to Brady material. (Pet. ¶ 32). Both claims fail.

With respect to the claim that the government offered an improper argument at closing, Ojo appears to argue that the government improperly referred in summation to supposedly inadmissible hearsay evidence from Ojo's phone showing that in March 2011, Ojo sent someone a text message requesting that an individual from Nigeria should help him make a driver's license. There was nothing improper about this argument. The phone and a CD and printed report of its contents were admitted at trial, without objection. (See GX 20, 22-A and 22-B). An appropriate foundation was laid that the phone was recovered from the front seat of Ojo's car. (Tr. 356). In addition, an FBI forensic examiner testified that he copied the contents of the phone onto a CD and printed out a hard copy. (Tr. 257).

With the phone and its contents in evidence, it was proper and appropriate for the government to refer to those materials during its jury summations. Ojo complains in particular that the government referred to a purported hearsay statement from his phone in March 2011, in which Ojo sent an outgoing text message to another individual in which he stated that he had e-mailed a picture to the individual and asked him to create a driver's license for Ojo. (Tr. 706). Ojo argues that this was improper because it was hearsay and because March 2011 was outside the time period of the indictment. He is incorrect.

First, the text message from Ojo was not hearsay because it was the statement of a party-opponent. The Federal Rules of Evidence explain that an opposing party's statement that is offered against him is not hearsay. See Fed. R. Evid. 801(d)(2)(A). Notably, evidence offered at trial showed that the phone belonged to Ojo, including the fact that it was seized from him, the fact that there were selfie-style photos of Ojo on the phone, and the fact that he sent text messages including statements like "my e-mail address is

10

dvdojo@yahoo.com." (Tr. 739-40). Accordingly, the outgoing text message requesting the creation of a driver's license was the statement of a party-opponent and was not hearsay.

Second, it was not improper for the government to refer to this evidence at summation. It is well-settled that evidence outside the time period of a charged conspiracy may be used to prove a defendant's guilt. See, e.g., United States v. Graziano, 391 Fed. Appx. 965, 966-67 (2d Cir. 2010) (district court acted within its discretion in determining that other acts were not "temporally too remote" from charged crime to be admitted); United States v. Carboni, 204 F.3d 39, 43-44 (2d Cir. 2000) (affirming district court decision admitting other act evidence that preceded by several months the crimes charged in the indictment); United States v. Roldan-Zapata, 916 F.2d 795, 805 (2d Cir. 1990) (items seized after period charged relevant if seizure "closely related" in time to charged conspiracy even if it relates to transactions outside the scope of the indictment). Accordingly, there was nothing improper in the government's reference to a text message from March 15, 2011, as proving criminal conduct that took place beginning in April 2011.

For these reasons, there was nothing improper about the government's reference in summation to materials found on Ojo's phone from March 2011. Therefore, there was no basis for trial counsel to object to the government's summation, and his failure to do so was not ineffective. See, e.g., Litwok v. United States, No. 14-CV-4341 (JFB), 2016 WL 6892814, at *7 (E.D.N.Y. Nov. 23, 2016) (counsel not deficient for failing to object to statements in government's summation where there was no prosecutorial misconduct).

Nor was trial counsel ineffective for failing to move to dismiss the indictment or vacate the conviction by alleging that the government engaged in prosecutorial misconduct by "knowing[ly] using false evidence," and failing to provide materials pursuant to Brady v. Maryland, 373 U.S. 83 (1963). (Pet. ¶ 32).

In support of that claim, Ojo alleges that the government improperly introduced "false evidence," namely, e-mails that one of the victims who testified at the trial, Ms. Orton, identified as those that she exchanged with others while negotiating to purchase a car. (See Pet. ¶ 23). To the contrary, the e-mail exhibits that the government offered into evidence were properly authenticated by Ms. Orton as "fair representations" of the e-mails she exchanged with "Joseph Wright," the purported seller of the vehicle, see Tr. at 120-21, as well as with purported representatives of eBay, see Tr. at 124-25. After they were authenticated, the emails, which were marked as government exhibits 1-A through 1-F, were received into evidence without objection. See Tr. at 121, 125.

Ojo further argues that because "Joseph Wright" used two different e-mail addresses to communicate with Ms. Orton in the admitted exhibits, it was necessarily error for counsel not to object to their admission. (Pet. ¶ 23). This argument too must fail because regardless of what e-mail address the communications came from, Ms. Orton identified all of the e-mails contained in government exhibit 1-A as "fair representations" of communications she exchanged with the person she believed to be the seller of the car. Accordingly, because

11

there was sufficient support in the record establishing the authenticity of the e-mail exhibits, the defendant's claim that their admission offers proof of prosecutorial misconduct and ineffective assistance of counsel must fail.

Ojo makes a related argument that trial counsel was ineffective because he failed to establish that the government withheld evidence of interviews or investigations related to Ms. Orton's e-mails, which Ojo concludes would necessarily have constituted "powerfully exculpatory evidence" under Brady. To begin, the government did not withhold Brady material from the defendant, nor did counsel fail to represent his client's interest effectively for failing to allege as much.

Ojo's argument here mirrors the arguments he raised in a series of post-conviction submissions (see, e.g., Ojo's pro se Motion for Hearing, 13-CR-334 Dkt. Entry. 53), alleging that Ms. Orton's e-mails contained "inconsistencies" and should not have been admitted as credible evidence. (Pet. ¶ 24). The government addressed these arguments in a written submission, which included a declaration from an FBI Agent from the Computer Analysis Response Team (see 13-CR-334 Dkt. Entry 69), and at sentencing where it offered an explanation for the purported discrepancies that Ojo identified (Sentencing Transcript ("Sent. Tr.") 17-23). Moreover, the Court considered and rejected Ojo's arguments regarding the discrepancies in the e-mail exhibits prior to imposing sentence. Specifically, the Court held:

> Having reviewed Mr. Ojo's submission and the government's response, I find that Mr. Ojo has neither met his high burden to demonstrate that he is entitled to a new trial under Rule 33, nor has he even met the burden necessary to warrant an evidentiary hearing on the issue.

(Sent. Tr. at 23).

Ojo now alleges that because the government did not provide any discovery or 3500 material detailing its explanation that Ms. Orton had forwarded the admitted e-mails from her AOL account to a more recently created Gmail account, it necessarily withheld Brady material. Ojo is wrong on two accounts. First, the fact that the e-mails were forwarded between two accounts is apparent on the face of the e-mails that were admitted, which Ms. Orton authenticated as accurate. (See Sent. Tr. at 32). Second, even if this narrative were established at trial, it would not have served to exculpate Ojo. As the government stated at sentencing:

> Meghan Orton didn't point out Mr. Ojo. She didn't say, Mr. Ojo is the guy who sent the e-mails. She had no idea. It didn't make any difference to her who the defendant was. Her concern was I've been defrauded.

(Sent. Tr. at 31). The Court's post-trial ruling on the matter also refutes Ojo's claim that discrepancies in the e-mails could give rise to a Brady claim: "Mr. Ojo has not shown that the e-mails were material to the jury's verdict" (Sent. Tr. at 32). See Brady, 373 U.S. at 87 ("the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment . . .").

Accordingly, Ojo's trial counsel was not ineffective for failing to accuse the government of having engaged in prosecutorial misconduct with respect to the testimony of and authentication of exhibits by Ms. Orton.

2. Ojo Makes No Showing of Prejudice from These Claimed Errors

Ojo makes no showing that he was prejudiced as a result of the alleged ineffectiveness. Indeed, the government's evidence of Ojo's guilt was overwhelming.

At trial, the government introduced evidence that individual victims wired money through Western Union to pay for cars that they never received. Through both wiretap evidence and through evidence recovered from Ojo's phone, the government showed that Ojo received text messages containing the Western Union transaction numbers, names, addresses, and amounts wired by victims, and names and addresses of recipients, including for Western Union wire transfers sent by specific victims who testified at trial.

Ojo personally picked up a number of these fraudulent wire transfers at Western Union locations. For instance, a videotape of a transaction conducted at a Western Union in Irvington, New Jersey, on June 13, 2011, depicted the defendant, wearing the same black and gray plaid New York Yankees baseball cap found in his car at the time of his arrest, picking up $1,500 that had been wired by a victim. In addition, at the time of his arrest, Ojo had just minutes earlier picked up at a Rapid Check Cashing location in Irvington, New Jersey, $2,639 wired by two other victims to a purported seller named "Anthony Dakova." At the time of his arrest, Ojo possessed a false Pennsylvania driver's license in the name of "Anthony Dakova." Ojo also possessed three other fraudulent driver's licenses, all of which were also linked to fraudulent Western Union wire transfers. In addition, Ojo also possessed at the time of his arrest a list of approximately 50 Western Union locations near Irvington, New Jersey as well as blank Western Union wire transfer claim forms.

The government also introduced evidence at trial showing that Ojo instructed others to destroy evidence after his arrest. After the FBI arrested Ojo on July 11, 2011, agents took him to several Western Union locations in an effort to collect the money that Ojo had planned to pick up that day. During those Western Union visits, Ojo kept possession of his cellular telephone so that he could communicate with individuals in Romania about those pick-ups. Unbeknownst to the agents, however, Ojo sent several messages to an individual who appeared to be his girlfriend in the Yoruba language directing her to destroy the evidence. Specifically, those messages (as translated) stated: "The Feds arrested me. Clean up the house." and "Clear everything…. Break the two machines that are mine."

13

Because the evidence of Ojo's guilt was overwhelming, Ojo cannot meet the Strickland requirement that he show that any of trial counsel's alleged errors undermined confidence in the jury verdict or provide a reasonable probability that the result would have been different. See, e.g., Simpson v. United States, No. 12-CV-1271 (SJ), 2016 WL 1249245, at *5 (E.D.N.Y. Mar. 25, 2016) (because evidence against petitioner was overwhelming, he could not prove he suffered prejudice as a result of his trial attorney's alleged ineffectiveness); Hill v. United States, No. 09-CV-4499 (DRH), 2015 WL 5821440, at *9 (E.D.N.Y. Oct. 5, 2015) (rejecting claim of ineffectiveness based on trial counsel's failure to move to suppress post-arrest statements because, given the overwhelming evidence, "there is no reasonable probability that the result would have been different"); Barry v. United States, No. 14-CV-5898 (RJD), 2015 WL 3795866, at *2 (E.D.N.Y. June 17, 2015) (overwhelming evidence of defendant's guilt forecloses defendant's "ability to establish that any of counsel's supposed trial errors caused him 'prejudice' within the meaning of Strickland").

### 3. Appellate Counsel Was Not Ineffective

Ojo complains that appellate counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness with respect to the cross-examination of government witnesses. (Pet. ¶ 32).

As discussed above, trial counsel was not ineffective with respect to cross-examination of government witnesses, therefore appellate counsel was not ineffective for failing to raise on appeal trial counsel's ineffectiveness. See Akosa v. United States, 219 F. Supp. 2d 311, 317 (E.D.N.Y. 2002) (holding that because trial counsel was not ineffective, the petitioner could not demonstrate any prejudice resulting from appellate counsel's failure to challenge the effectiveness of trial counsel).

Moreover, it is well-settled that it is appropriate for appellate counsel to "winnow out weaker arguments on appeal and focus on one central issue if possible, or at most on a few key issues." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) ("[C]ounsel does not have a duty to advance every nonfrivolous argument that could be made."). Given the authorities set forth above explaining that cross-examination is entrusted to the judgment of the lawyer and will not be second-guessed by the court unless there is no strategic or tactical justification for the questioning, it was not error for appellate counsel to decline to raise such a trivial claim with the Second Circuit.

Finally, given that the Second Circuit has frequently expressed a preference for claims of ineffective assistance of trial counsel to be raised pursuant to a motion under Section 2255, appellate counsel was not ineffective for failure to raise such a claim on direct appeal. See, e.g., United States v. Litwok, 611 Fed. Appx. 12, 15-16 (2d Cir. 2015) (noting that ineffective assistance claims raised for the first time on direct appeal "would be better suited to a collateral proceeding").

B. Ojo's Remaining Grounds for Relief

In the remaining grounds of his petition, Ojo argues that the district court erred in failing to conduct an evidentiary hearing regarding purportedly inconsistent evidence (Ground Two), erred in denying Ojo's motion for a new suppression hearing (Ground Three), that the government failed to provide purportedly exculpatory evidence relating to a victim who testified at trial (Ground Four), and that the government engaged in prosecutorial misconduct by eliciting hearsay evidence at trial and failing to disclose the purportedly exculpatory material referred to in Ground Four (Ground Five).

All of Ojo's remaining claims were or could have been raised on direct appeal. Accordingly they are all procedurally barred. Specifically, as to the claims that were raised on direct appeal, Ojo argues that the Second Circuit affirmed his conviction because it made "inaccurate and unreasonable factual determinations." (Pet. ¶ 33). However, Ojo cannot re-litigate issues already decided against him on direct appeal. (See supra, p. 4). As to the claims that were not, but could have been, raised on direct appeal, Ojo has not shown cause for failing to raise these claims on direct appeal and prejudice from the claimed error. (See id.).

In addition, each of Ojo's claims also fails on the merits as well.

In Ground Two, Ojo raises arguments concerning inconsistencies in the evidence. Although it is not clear precisely to what inconsistencies Ojo is referring, there are several that are raised elsewhere in his papers. To the extent he argues that the reasons for the traffic stop that were given in the suppression hearing are inconsistent, that issue was raised in Ojo's pro se brief on direct appeal and denied on the merits, and cannot be re-raised on a habeas petition. To the extent he argues an inconsistency in the change in the date range for the charged conspiracy, the claim should be rejected for the reasons set forth above, see supra, pp. 6-7. To the extent he argues an inconsistency in the issues with the e-mails from Ms. Orton, the claim should be rejected for the reasons set forth above, see supra, pp. 11-13.

In Ground Three, Ojo argues that the Court should not have transferred the record of the prior proceedings in Case No. 11-CR-570 to the new docket for Case No. 13-CR-334 following dismissal without prejudice of the initial indictment for a speedy trial violation, and therefore that he should have received a new suppression hearing once the case had been re-indicted under the new docket number. This was an issue that could have been, but was not, raised on direct appeal, and Ojo shows no cause and prejudice from his failure to raise this on direct appeal. In addition, it was appropriate for the Court to transfer the record of the prior proceedings under Case No. 11-CR-570, otherwise Ojo would have been precluded from appealing any of the rulings in that docket when he appealed from the final judgment in Case No. 13-CR-334. See United States v. Reale, 834 F.2d 281, 282 (2d Cir. 1987) (per curiam) (defendant cannot appeal from dismissal of an indictment without prejudice, or from any other order on that docket, because the dismissal is not a final order subject to appeal). Thus, had the Court not transferred the record to Case No. 13-CR-334, Ojo would not have been able to appeal the Court's decision on the suppression motion. As

15

for Ojo's claim that the Court erred in failing to grant him a new suppression hearing, he can show no prejudice from that decision because the government would have presented the same evidence as it presented at the first hearing, and the Court would have reached the same conclusion.

In Ground Four, Ojo argues that the government withheld evidence of interviews or investigations related to Ms. Orton's emails, which he concludes would necessarily have constituted "powerfully exculpatory evidence" under Brady. (Pet ¶ 37). This was an issue that could have been, but was not, raised on direct appeal, and Ojo shows no cause and prejudice from his failure to raise this on direct appeal. Moreover, the claim should also be rejected on the merits, for the reasons stated above, see supra, pp. 11-13.

Finally, in Ground Five, Ojo argues that the government committed prosecutorial misconduct by not disclosing the purported Brady material discussed in Ground Four. For the reasons discussed above, this claim is procedurally barred and fails on the merits.

Ojo also argues that the government committed prosecutorial misconduct by referring in summation to supposedly inadmissible hearsay evidence from Ojo's phone. That claim was not, but could have been, raised on direct appeal, and Ojo has not shown cause for failing to raise this claim on direct appeal and prejudice from the claimed error. In addition, the claim should also be rejected on the merits, for the reasons stated above, see supra pp. 10-11.

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court deny Ojo's motion to vacate his conviction pursuant to Section 2255.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:    /s/
Douglas M. Pravda
Margaret Gandy
Assistant U.S. Attorneys
(718) 254-7000

cc: David Ojo, petitioner (by first-class mail)
     Clerk of Court (ARR) (by ECF)

16